USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 15, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
:
MARISOL COLLADO, :
:
        Plaintiff, :
:
    -v- : 17-cv-3078 (KBF)
:
CROTHALL HEALTHCARE INC., : OPINION & ORDER
:
        Defendant. :
:
------------------------------------------------------------- X

KATHERINE B. FORREST, District Judge:

  Plaintiff Marisol Collado, a clerical administrative associate at New York City Health and Hospitals Corporation ("HHC"), brings this diversity action against Crothall Healthcare Inc. ("Crothall") seeking relief for injuries she sustained when she slipped and fell at work.

  Defendant now moves for summary judgment. For the reasons set forth below, that motion is GRANTED.

## I.  FACTUAL BACKGROUND

  The following facts are materially undisputed an all inferences are drawn in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

###  A. Collado's Accident

  Collado was, at all relevant times, employed by HHC as a clerical administrative associate at Lincoln Hospital ("Lincoln") in the Bronx. (ECF No. 17-10, Def.'s Local Rule 56.1 Statement ("Def.'s 56.1 Statement") ¶ 4.)

On May 5, 2014, plaintiff slipped and fell on the second floor of Lincoln's Annex Building while delivering a document to her supervisor in a nearby office. (Id. ¶ 15–16.) The floor had been recently mopped by Melfi Orfiz, who worked for NYCHHC as a housekeeper. (Id. ¶¶ 5, 17.) At the time, there were no "wet floor" signs in the area where plaintiff fell. (Id. ¶ 18.)

　　B. The Crothall Contract

On November 1, 2011, HHC and Crothall entered into a contract under which Crothall would provide housekeeping management services to Lincoln Hospital. (Id. ¶ 7.)

The contract provided, among other things, that Crothall would: 1) provide their own onsite managers; 2) "[t]rain, manage, and direct [NYCHHC's] Unionized Employees in the performance of the Services, in accordance with [NYCHHC's] policies and procedures;" 3) maintain NYCHHC employees time records; 4) provide and maintain training materials; and 5) furnish use of Crothall's proprietary software for housekeeping purposes. (ECF No. 21, Blyer Affirmation ("Blyer Aff."), Ex. B.)

Pursuant to this contract, on any given day, Crothall had two assistant directors on site and one director on site, between the hours of 6 a.m. and 11 p.m. (ECF No. 21, Ex. I, Simpson Decl. 5–7.) After 11 p.m, no Crothall personnel were on site until 6 a.m. in the morning. (Id.) These directors and assistant directors supervised HHC supervisors, whose job it was in turn to supervise the 60–70 HHC housekeepers who worked at any given shift. (Id. at 15–17.)

2

C. <u>Management Structure</u>

All housekeepers at Lincoln during the relevant period were HHC employees. (Def.'s 56.1 Statement ¶ 12.) They were hired by HHC, paid by HHC, wore HHC ("Lincoln") uniforms, and could be terminated only by HHC. (<u>Id.</u> ¶ 14.)

The housekeepers are directly supervised by HHC supervisors. In his deposition, Ortiz testified about one of his supervisors, Francisco Torres. (ECF No. 17-1, Ex. A, Ortiz Dep. at 15.) Torres is an HHC employee. (<u>Id.</u>) According to Ortiz, in his capacity as supervisor, Torres supervises "all the areas, to make sure that all the work is supposed to be done, that everybody will have the necessary equipment that they might need so they might have all the supplies that may be needed." (<u>Id.</u> at 15.) Ortiz stated in his deposition that, in addition to his relationship with his supervisor, he would occasionally report a problem to Roxann Simpson, one of the Crothall managers. (<u>Id.</u> at 20.)

Defendant also submits a deposition from one of Crothall's assistant managers, Roxann Simpson. According to Simpson, the job of the Crothall assistant director is to make "[i]nspections, patient visits, [and] . . . check the cleanliness of the facilities" as well as to "make sure the supervisors are doing their work which is to supervise the employees." (ECF No. 17-7, Simpson Dep. at 12.) According to Simpson, the HHC supervisors are in charge of "making sure the employees are doing their jobs." (<u>Id.</u> at 16.) According to Simpson, if an HHC employee had an issue that required help from the housekeeping department, they would typically call a supervisor first, and only call a Crothall employee "if it doesn't get done." (<u>Id.</u>

3

at 18–19.) Collado, in her deposition, stated similarly that if there was a spill, and the maintenance department "didn't answer right away," she would call a Crothall manager. (ECF No. 21-8, Collado Dep. at 29.) All materials distributed by Crothall are approved by Lincoln first. (Simpson Dep. at 24.) All trainings are signed off on by Lincoln. (Id. at 113.) Cleaning standards are established by Crothall and Lincoln together. (Id. at 51.)

On a daily basis, Crothall personnel run a daily meeting in which they "talk about which [sic] it has been asked by the hospital or some of the area from which they have been given complaints." (Ortiz Dep. at 37.) After the daily meetings, which the HHC supervisors attend, the HHC supervisors assign the shifts for the day.[1] (Id. at 38–39.) Ortiz stated that on a typical day an HHC supervisor gives direction to him while cleaning, but that "very rarely" a Crothall employee has given Ortiz a direction to move to a different area. (Id. at 76.)

II. LEGAL PRINCIPLES

A. Summary Judgment

Summary Judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317,

---

[1] Ortiz's statements are self-contradictory on this point. He states that he gets his assignments from his supervisors at one point, but at another states that a Crothall employee gives out the daily shifts. (Ortiz Dep. at 76.) The Court's opinion does not depend upon who assigns daily shifts, however.

323 (1986). When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial. Id. at 322–23.

In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citing LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005)). Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks, citations, and alterations omitted).

    B. Special Employee Status

New York Workers' Compensation Law § 29(6) states that "[t]he right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee . . . when such employee is injured . . . by the negligence or wrong of another in the same employ." (emphasis added)

However, "[a] general employee of one employer may also be in the special employ of another, notwithstanding the general employer's responsibility for payment of wages and for maintaining workers' compensation and other employee benefits." Thompson v. Grumman Aerospace Corp., 585 N.E.2d 355 (N.Y. 1991). The special employee rule applies only "where the usual employer relinquishes control of the servant to another person, thereby making the servant a special employee of the other person and making that person, rather than the usual employer, liable for the servant's acts." Perkins v. Crothall Healthcare, Inc., 148 A.D.3d 1189, 1190 (N.Y. App. Div. 2017) (citing Reinitz v. Arc Elec. Constr. Co., 104 A.D.2d 247, 250 (N.Y. App. Div. 1984). The presumption of general employment can be rebutted only upon "clear demonstration of surrender of control by the general employer and assumption of control by the special employer." Thompson, 585 N.E.2d at 357.

Relevant factors to consider to determine whether a special employment relationship exists include: 1) the right to control the employee's work; 2) the method of payment; 3) the furnishing of equipment; 4) the right to discharge the employee; and 5) the relative nature of the work. See Forjan v. Leprino Foods, Inc., 209 Fed. App'x 8, 10 (2d Cir. 2006) (unpublished) (citing Navarette v. A & V Pasta Prods., Inc., 32 A.D.3d 1003, 1004 (N.Y. App. Div. 2006). Moreover, a "significant and weighty" factor is "who controls and directs the manner, details, and ultimate result of the employee's work." Thompson, 585 N.E.2d at 358.

6

While special employee status is "usually a question of fact," there is no "per se rule that a question of fact always exists in these cases." Id. at 357. New York courts have frequently found, in situations similar to this one, that no triable issue of fact exists and that summary judgment should be granted. See Perkins, 148 A.D.3d at 1191 (holding, for the same contract at issue here, that "HHC did not surrender control of its housekeeping staff" due to the fact that it paid their wages and had final decision-making power over hiring, firing, and disciplinary matters); Spencer v. Crothall Healthcare, Inc., 38 A.D.3d 527, 528 (N.Y. App. Div. 2007) (holding that the hospital in that case did not surrender control over its employees for the same reason and thus finding that plaintiff was precluded by the exclusivity provision of the Workers' Compensation Law from bringing the action).

Some courts, however, have found there to be a triable issue of fact as to special employee status. See Lotz v. Aramark Servs., Inc., 98 A.D.3d 602, 603 (N.Y. App. Div. 2012) (finding that plaintiff raised a triable issue of fact as to special employee status where she sued a third-party contractor for cleaning service); see also Santorelli v. Crothall Servs. Grp., Inc., 2017 WL 728227, at *8 (S.D.N.Y. 2017) (finding no clear New York state rule and thus relying on Thompson—and finding that several factors, such as who controlled and directed the employee's work, were factually disputed, and thus denying summary judgment).

    C. Espinal Factors

Under New York law, a contractual obligation, standing alone, does not give rise to tort liability in favor of a third party. Espinal v. Melville Snow Contrs. Inc.,

773 N.E.2d 485, 487 (N.Y. 2002). However, New York law has identified three circumstances in which there is a duty to a third party that arises from a contracting party's failure to properly perform a contractual duty. These three circumstances are: "1) where the contracting party, in failing to exercise reasonable care in the performance of his duties, launches a force or instrument of harm; 2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties; and 3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely." Id. at 488.

III. DISCUSSION

Defendant moves for summary judgment, arguing: 1) that workers' compensation benefits are Collado's exclusive remedy for the injuries she sustained; and 2) that Crothall did not owe Collado any independent duty that could support her negligence claim. It argues, therefore, that there are no triable issues and that summary judgment is appropriate.

For her part, plaintiff argues that Ortiz was a special employee of Crothall at the time of the incident, and therefore that Crothall can be held vicariously liable. She asserts that whether Ortiz was a special employee is a material question of fact, precluding summary judgment. She argues further that the defendant owed her an independent duty of care, asserting both that Crothall launched the condition that led to her injury and also that Crothall had entirely displaced HHC's duty to keep the premises safe.

8

A. <u>Special Employee</u>

While whether an employee is a special employee is "usually a question of fact," courts have often resolved special employee status on summary judgment—including in cases involving the very same contract at issue here. See <u>Perkins</u>, 148 A.D.3d at 1189.

<u>Thompson</u> requires "a clear demonstration of surrender of control by the general employer and assumption of control by the special employer." Thompson, 585 N.E.2d at 357. Based on the parties' submissions here, the Court does not find that such a surrender has occurred.

Both Ortiz and Simpson stated that Ortiz's daily supervisor was an HHC employee. According to Ortiz, it was the HHC supervisor with whom he interacted most frequently and who made sure his work was being done, and made sure he was adequately supplied. Simpson stated that the job of the Crothall assistant directors was to supervise the supervisors. He also stated that all the standards, trainings, and materials that Crothall produces are signed off on by the hospital, and/or co-created.

Ortiz was employed by, paid by, hired by, and supervised by HHC personnel. That there was another layer of supervision involving Crothall personnel is of note, but does not establish a material issue of fact as to whether HHC clearly demonstrated the surrender <u>Thompson</u> requires.

Plaintiff points the Court towards <u>Santorelli</u>, in which the court denied summary judgment on many of the same facts presented here. <u>Santorelli</u>, 2017 WL

9

728227 at *8. In that case, the court found that enough questions remained for the action to survive the summary judgment stage—namely, that an employee of the third-party contractor (Crothall, again) testified that he had the power to recommend discipline or termination to the employer, and that there had been testimony that the employee in question reported only to Crothall. The court therefore found material issues of fact—while at the same time noting that several factors weighed against the plaintiff, such as the fact that she was paid by the hospital, that the hospital was the primary furnisher of equipment, and that the standards were in accordance with hospital policy.

Here, there is no evidence that Crothall has the power to discipline or recommend termination. Furthermore, there has been clear and uncontroverted evidence that Ortiz regularly reported to and was supervised by an HHS employee. Santorelli is plainly distinguishable on these grounds alone.

     B. Independent Tort Duty

Furthermore, the Court finds no independent duty owed from Crothall to Collado. None of the Espinal exceptions are on point. The first exception, launching an instrument of harm, requires a contractor to "create[] or exacerbate[] a dangerous condition." Espinal, 773 N.E.2d at 488. Plaintiff's argument here is derivative of her special employee argument—she claims that if Ortiz was a special employee, than it was his negligence that created the dangerous condition. Given the Court's conclusion above, then, this exception does not apply.

10

Plaintiff also argues that the third <u>Espinal</u> exception applies—and that Crothall <u>entirely displaced</u> HHC's duty to maintain the premises safely.  However, given the fact that Crothall did not provide security services or maintenance services, and did not entirely take over the housekeeping services, no reasonable juror could find that Crothall "wholly absorbed" HHC's duty to maintain its premises safely.  See <u>Doona v. Onesource Holdings, Inc.</u>, 680 F. Supp. 2d 394 (E.D.N.Y. 2010) (holding that a janitorial contract between defendant and an airport which required it to clean various parts of the airport did not displace the airport's duty to maintain its premises safely); <u>see also</u> <u>Perkins</u>, 148 A.D.3d at 1191 (finding when analyzing the same contract that the third <u>Espinal</u> factor did not apply and hence granting summary judgment to the defendant); <u>Lotz</u>, 98 A.D.3d at 603 (finding that defendant cleaning service had no duty to the plaintiff as their contract was "not comprehensive and exclusive" enough to establish the exception to the general rule); <u>Schmidt v. Promaster Cleaning Serv., Inc.</u>, 281 A.D.2d 468 (N.Y. App. Div. 2001) (holding that a contract for cleaning was a "limited undertaking" and "not a comprehensive maintenance obligation" and thus that there was no duty created).  Plaintiff points, again, here to <u>Santorelli</u>, in which the court found a triable issue of material fact under both the first and third <u>Espinal</u> factors.  But once again, her argument is unpersuasive—the <u>Santorelli</u> Court in part based its opinion on the fact that it found a question as to who was responsible for "day-to-day operation of the housekeepers."  <u>Santorelli</u>, 2017 WL 728227, at *10.  As this

Court stated above, it does not conclude that Crothall completely supplanted HHC's management of its housekeeping services.

Crothall's contract to provide housekeeping management services is thus too limited to "entirely displace" HHC's duty of care. The Court finds that the third Espinal exception does not apply here.

IV. CONCLUSION

For the reasons set forth above, the Court GRANTS defendant's motion for summary judgment. The Clerk of Court is instructed to terminate the motion at ECF No. 17 and terminate this case.

Dated:   New York, New York
         December 15, 2017

_____
KATHERINE B. FORREST
United States District Judge